IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DUSTY M.,

        Plaintiff,

  v.                                    Civil Action No.
                                            5:18-CV-0899 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF STEVEN DOLSON   STEVEN R. DOLSON, ESQ.
126 North Salina Street
Suite 3B
Syracuse, New York 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH           PETER W. JEWETT, ESQ.
United States Attorney for the      Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on June 25, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)  Plaintiff's motion for judgment on the pleadings is GRANTED.

2)  The Acting Commissioner's determination that plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

    3)    The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

    4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:     July 2, 2019
              Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DUSTY M.,

                        Plaintiff,

vs.                                          5:18-CV-899

Commissioner of Social Security,

                        Defendant.
------------------------------------------------------x
```

*DECISION* - June 25, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | STEVEN R. DOLSON<br>Attorney at Law<br>126 North Salina Street<br>Syracuse, New York 13202 |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  PETER W. JEWETT, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1 THE COURT: I have before me a request for judicial
2 review of an adverse determination by the Commissioner of
3 Social Security pursuant to 42, United States Code, 405(g)
4 and 1383(c)(3). The background is as follows.
5 The plaintiff was born in July of 1983 and is
6 currently almost 36 years old. She was 32 years old at the
7 time of the hearing and 29 at the time of the alleged onset
8 of her disability. At various places in the record it
9 appears that she is either 5-foot-7 or 5-foot-8 in height and
10 weighs between 221 and 228 pounds. That includes pages 43
11 and 451 of the Administrative Transcript. According to her
12 BMI, and the Administrative Law Judge did note this,
13 plaintiff is obese, although her medical records do not spend
14 a lot of time dealing with her obesity. She is left-hand
15 dominant. She secured a GED in or about 2003. That's at 445
16 of the Administrative Transcript.
17 Plaintiff lives in Moravia together with her
18 boyfriend. That's at 38 and 55 of the Administrative
19 Transcript. She has four children, who at the time of the
20 hearing in this matter were ages seven, ten, eleven and
21 thirteen.
22 Physically plaintiff suffers from both lumbar and
23 cervical degeneration with radiculopathy. She had magnetic
24 resonance imaging testing of the lumbar spine area on
25 November 13, 2012 that indicated a right L5 nerve root sheath

1    cyst of 6 millimeters, and smaller right S1 nerve root sheath
2    cyst of 4 millimeters, L4/L5 disc protrusion without
3    herniation or nerve root contact.  That's at 260.
4         On February 2, 2015 she underwent another MRI
5    testing of her lumbar spine.  The impression noted at
6    page 490 was that there was essentially no significant
7    changes identified compared to the November 2012 MRI, with no
8    evidence of central canal or intervertebral foraminal
9    stenosis, with minimal sub-ligamentous disc bulging at L2/L3,
10   L3/L4 and L4/L5 levels.
11        Again she was x-rayed on October 24, 2012.  That's
12   at page 414.  That showed mild disc space narrowing at the
13   L5/S1 level cannot be excluded.  But no acute fracture or
14   spondylolisthesis.  Cervically she underwent an MRI on
15   September 4, 2015.  That's at page 472.  The results showed
16   multi-level cervical spine degenerative changes, worst at
17   C5/C6 where a right paracentral disc protrusion abuts and
18   flattens the right ventral cervical cord, overall causing
19   moderate narrowing of the spinal canal.  She underwent an
20   additional MRI in December of 2015.  That's at page 465.  The
21   impression was no significant change since the prior MRI with
22   moderate-sized right paracentral disc protrusion at C5/C6,
23   resulting in moderate central spinal canal and right lateral
24   recess stenosis.
25        The plaintiff also underwent electromyography, or

1  EMG, study on October 14, 2015.  The results are at page 619.
2  The conclusion is this is an abnormal study.  There is
3  electro-diagnostic evidence of a chronic, right C6
4  radiculopathy.
5         Mentally the plaintiff suffers from depressive
6  disorder, sometimes characterized as a major depressive
7  disorder, anxiety, panic disorder.  She has undergone
8  treatment through various sources, including Physician's
9  Assistants Scott Brown and Patricia Nelson of the New York
10 Spine and Wellness Center; Dr. Barry Pollack, a neurosurgeon;
11 and Dr. William Touchstone for her mental condition.  She has
12 been prescribed many medications, including injections,
13 Gabapentin, Cyclobenzaprine, Effexor, Perphenazine, Ambien,
14 Topamax, Seroquel, Tramadol, Baclofen, Ibuprofen and
15 Oxycodone.
16        Plaintiff last worked in either 2011 or 2012.
17 That's at page 40.  Her last position was as a personal care
18 aide for New Beginnings.  She also was a truck driver and
19 delivery person from December 2009 to September 2010.  She
20 had a CDL license.  She quit that position, according to her,
21 due to anxiety.  She worked at Walmart in sales and stocking
22 from October 2004 to April 2009.  The employment there was
23 terminated due to absenteeism.  She also worked as a cashier
24 at McDonald's in 1999.
25        Plaintiff uses a cane to ambulate.  She is a smoker

1  and smokes a half pack of cigarettes per day. That's at 451.
2         In terms of activities of daily living, she can
3  dress, bathe and groom herself. She does some cooking,
4  although it is difficult for her to stand for long periods of
5  time. She does some cleaning, some laundry, she plays with
6  her children, she fishes, socializes, watches television,
7  listens to radio and cares for her children. The ADL's are
8  referenced at page 56, 210 to 217, 448 and 451 of the
9  Administrative Transcript.
10        Procedurally, plaintiff applied for Title II and
11 Title XVI benefits on April 2, 2014, alleging a disability
12 onset date of October 12, 2012. In support of her
13 application, she alleged the existence of a lumbar spine
14 impairment with bulging, two cysts in her nerve root,
15 depression, anxiety, insomnia, mood disorder and sciatica
16 bilaterally.
17        A hearing was conducted by Administrative Law Judge
18 Julia Gibbs on March 10, 2016 to address plaintiff's claims
19 for benefits. ALJ Gibbs issued an unfavorable decision on
20 September 28, 2016, finding that plaintiff was not disabled
21 at the relevant times and, therefore, ineligible for the
22 benefits sought.
23        As counsel indicated, the Social Security
24 Administrative Council accepted plaintiff's request for
25 review of the determination and issued a decision on June 30,

1  2018, essentially making the same findings and specifically
2  addressing each of the five steps of the sequential
3  determination test.  So that became a final determination of
4  the Agency on that date.
5      In terms of the Administrative Law Judge's
6  decision, ALJ Gibbs applied the familiar five-step sequential
7  test for determining disability.
8      Step one, after noting that the date on which
9  plaintiff was last insured was December 31, 2017, she found
10 that plaintiff had not engaged in substantial gainful
11 activity since October 12, 2012, the alleged onset date.
12     At step two she concluded that plaintiff suffers
13 from severe impairments imposing more than minimal
14 limitations on ability to perform basic work functions,
15 including obesity, lumbar disc degeneration, lumbar
16 radiculopathy, cervical radiculopathy, obstructive sleep
17 apnea, and major depressive disorder.
18     At step three concluded the plaintiff's conditions
19 did not meet or medically equal any of the listed
20 presumptively disabling conditions set forth in the
21 Commissioner's regulations; specifically including
22 considering listings 1.04, 12.04 and 12.06.
23     She then proceeded, based on a review of the
24 available evidence, to conclude that plaintiff retains the
25 residual functional capacity to perform sedentary work,

1  except she requires a cane for ambulation, and cannot
2  interact with the public, and cannot work on assembly lines
3  or perform fast-paced work.
4  Proceeding to step four, the Administrative Law
5  Judge concluded that plaintiff is unable to perform her past
6  relevant work due to the demands of those four positions.
7  At step five, after noting that if the
8  Medical-Vocational Guidelines, or Grids, were applied and
9  plaintiff were able to perform a full range of work in the
10 sedentary level, a finding of no disability would be
11 compelled by Rule 201.25, the Administrative Law Judge
12 concluded based on testimony of the vocational expert that
13 despite her impairments plaintiff can work as an addressing
14 clerk, a document clerk, and as an inspector.
15 The standard which I must apply, as you know, is
16 very deferential.  I must determine whether correct legal
17 principles were applied and substantial evidence supports the
18 determination.  Substantial evidence being such evidence as a
19 reasonable person would find sufficient to support a
20 conclusion.
21 The first argument raised by the plaintiff concerns
22 the opinions of Physician Assistant Nelson, which is at pages
23 335 and 336 of the Administrative Transcript; a physical
24 therapy intake evaluation of Douglas Fye, that appears at
25 page 364 of the Administrative Transcript; and the assessment

1  of the Agency physician, Dr. E. Kamin, that appears in the
2  record at pages 75 through 77.
3      As plaintiff's counsel notes, none of these three
4  qualify as acceptable medical sources. There are other
5  sources clearly. They have relevant information to offer
6  concerning the functionality of the plaintiff; however, in my
7  view these three do not -- well, the first two do not qualify
8  as medical source statements. The third from Dr. Kamin is
9  essentially supportive of the RFC. Physician Assistant
10 Nelson does not specify duration except to say until cleared
11 for neurosurgery and, of course, it was determined ultimately
12 that plaintiff was not a candidate for neurosurgery. It does
13 not in my view qualify as a source statement.
14     Similarly, the physical therapy evaluation or
15 intake form of Mr. Fye simply states, and presumably based
16 largely upon plaintiff's statements, what plaintiff's current
17 abilities are and what the expected outcome of physical
18 therapy would be. Once again, in my view it's questionable
19 whether this is an acceptable statement or opinion and it
20 certainly does not give indication of duration.
21     It is well-established that an Administrative Law
22 Judge does not need to address and state in the opinion that
23 each medical piece of evidence has been considered. The
24 bigger problem, in my mind, is the question of whether the
25 record should have been more fully developed regarding

plaintiff's cervical issue. The onset of or exacerbation that led to the MRI and EMG findings post dates Dr. Ganesh's opinion. Dr. Ganesh, of course, did reference in his evaluation an examination of the cervical area and indicated at page 452 cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. But that examination was in August of 2014. It was really not until 2015 and 2016 that it appears plaintiff began to experience difficulties in the cervical area.

The record contains two MRIs and an EMG that shows the existence of radiculopathy. The EMG at 619 shows evidence of chronic right C6 radiculopathy. The ALJ, when that was brought to her attention, was seemingly surprised to learn of that and indicated at page 52, in response to the attorney pointing it out, "I'm not sure I understand. But I'll get a medical expert to take a look at that." And again further down on the page indicates, "We'll take a -- I'll get that interpreted later." There does not seem to be any indication that medical expert opinions were sought by the Administrative Law Judge. The record certainly does not disclose that.

In my view, that alone would provide a basis to conclude that the hearing and determination was not fundamentally fair and to remand based on *Squilla versus Commissioner of Social Security*. It is found at 2018 WL

1  5847118.  It is a decision from the Western District of
2  New York from 2018.
3         Normally I know that the case law indicates that if
4  a record contains only diagnostic evidence, if it is a matter
5  of common sense that there is no limitation greater than that
6  found in the RFC, it is not necessary to recontact either a
7  treating source or order a consultative examination.
8  However, if there is only diagnostic evidence without support
9  and it appears that there is likely a greater or potentially
10 a greater limitation presented than found in the RFC, an
11 Administrative Law Judge is under a duty to either recontact
12 a treating source and request further information or a
13 medical source statement, or to order a consultative
14 examination.
15        There is many cases that support that, but in this
16 district one is *House versus Astrue*, at 2013 WL 422058 from
17 2013.  And there is also an excellent one from the Western
18 District of New York, District Judge Wolford, in *Milliken*
19 *versus Berryhill*, 2017 WL 3208635.
20        The existence of the testing that shows
21 radiculopathy has to be taken in the context of plaintiff's
22 hearing testimony at page 53 that she has difficulty in
23 reaching and in holding.  That's also at 51.  SSR 85-15
24 speaks to reaching, handling and fingering, and provides as
25 follows, "Significant limitations of reaching or handling,

1  therefore, may eliminate a large number of occupations a
2  person could otherwise do.  Varying degrees of limitations
3  would have different effects, and the assistance of a VS may
4  be needed to determine the effects of the limitations."
5     In this case the vocational expert testified that
6  the three positions that he found plaintiff could handle
7  require frequent reaching.  In my view, it's not proper for
8  the Commissioner to rely on Dr. Ganesh's opinions because
9  it's very clear that this condition post dated Dr. Ganesh's
10 examination and consultative report.
11    In my view, there was a failure of the duty on the
12 part of the Administrative Law Judge to get more information,
13 particularly after admitting that she didn't understand the
14 significance of the EMG testing.
15    And so I'm going to order judgment on the pleadings
16 to the plaintiff, but without a directed finding of
17 disability.  I don't find persuasive proof of disability.  I
18 think the matter should be remanded for either the obtaining
19 of a medical source statement from a treating source or a
20 consultative examination to determine whether the cervical
21 issues of the plaintiff preclude her from performing even at
22 the sedentary level.
23    Thank you both for excellent presentations.  Hope
24 you have a great day.
25                *        *        *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                              _____
                              EILEEN MCDONOUGH, RPR, CRR
                              Federal Official Court Reporter